**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**RNJ HOLDINGS CORP., a Florida
Corporation,**

        Plaintiff,

        **v.**                         **Case No.**

**ADVANCED TOTAL MARKETING SYSTEMS,**    **JURY TRIAL REQUESTED**
**INC. , a Panama Corporation,**

        Defendant.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, RNJ Holdings Corp. (hereinafter referred to as "RNJ" or "Plaintiff"), by its

attorneys, as and for its Complaint against Defendant Advanced Total Marketing Systems, Inc.

(hereinafter referred to as "ATMS" or "Defendant"), alleges as follows, upon knowledge with

respect to itself and its own acts, and upon information and belief as to all other matters:

### Nature of Action and Subject Matter Jurisdiction

1.   This action seeks a Declaratory Judgment of Non-Infringement of registered and

common law trademark rights under 28 U.S.C. §§ 2201-2202, 15 U.S.C. § 1125, *et seq.*

Plaintiff further seeks a Declaratory Judgment of Non-Infringement of Defendant's trade

dress under 15 U.S.C. § 1125, *et seq.*

2.   Subject matter jurisdiction over this action is conferred upon this Court: (i)

pursuant to 28 U.S.C. §§2201 and 2202, because it involves a request for declaratory

judgment in a case of actual controversy; and (ii) pursuant to 28 U.S.C. §§1331 and 1338

and 15 U.S.C. §§1114 and 1125, because, *inter alia*, the suit concerns rights under the

Lanham Act.

### Personal Jurisdiction and Venue

3.   This Court has personal jurisdiction over Defendant because Defendant threatened Plaintiff with infringement litigation and has charged Plaintiff with infringement directly, in its letter directed to the Plaintiff in the State of Florida, sent on, March 16, 2015.  *See* Exhibit "A."  The letter was sent both electronically and by certified mail to Plaintiff's principal office located in this district at 3050 NW 40th Street Miami, FL 33142.

## The Parties

4.   Plaintiff RNJ is a Florida corporation that has a business address of 3050 NW 40th Street Miami, FL 33142 that orders products to be distributed in the United States from a food manufacturer abroad, and receives the finished products bearing the GEMBOS marks upon its arrival in the United States.  *See* Exhibit "B."

5.   On information and belief, Defendant ATMS is a Panamanian company with a business address of Comosa Bank Building, First Floor Samuel Lewis Avenue, P.O. Box 4881 Panama 5, Panama that manufactures products bearing the ZAMBOS marks and sells the finished product to other companies, but takes no active role in the dissemination of the food product in the United States.  *See* Exhibit "C."

## Facts Common to All Claims for Relief

6.   Plaintiff is a Florida company that sells GEMBOS products to third parties.

7.   Plaintiff owns various trademark applications pending before the United States Patent and Trademark Office ("USPTO"), Serial Numbers 86443196,  86443142 , 86423801 and a federal trademark registration, Registration Number 4,694,971 for GEMBOS in international class 029 for fried plantain; fruit based snack food, (hereinafter "The Marks").

8.   Prior to filing these applications, Plaintiff without counsel, conducted a search of the USPTO records to determine the availability of the proposed marks seeking registration on the principal register.

9.   All of the applications presented to the USPTO have been examined by trademark examiners whom searched the Office's database of registered and pending marks and found no conflicting marks that would bar registration under Trademark Act Section 2(d).  TMEP §704.02; *see* 15 U.S.C. §1052(d).

10. Plaintiff had to resolve and address informalities with regards to its various applications during the examination process.

11. Plaintiff did not have to resolve and address likelihood of confusion with any registered and pending marks.

12.  On or about March 16, 2015, Plaintiff received a cease and desist letter requesting that Plaintiff immediately expressly abandon the Marks and change its trade dress. In the event that Plaintiff failed to do so, Defendant warned, "If we do not hear from you within **five (5) business days** of the mailing and delivery of this letter, [it], may without further notice, commence legal action against you requesting injunctive relief, statutory and/or actual damages to the maximum extent allowable by law in preventing and stopping the infringement of ATMSI' intellectual property rights in addition to the disgorgement of all profits attributable to the infringement."

13.  Both Plaintiff and Defendant filed trademark applications wherein it appears that the trade dress of each is represented.

14. Upon information and belief, the Defendant has not distributed the goods associated with the trademark to the consuming public.  The Defendant has used distributors to sell the product to US consumers.

15. Plaintiff's ownership of the applications and registration for GEMBOS (the Marks) does not infringe any rights that Defendant may allegedly own in ZAMBOS.

16. Plaintiff has a right to own and use the Marks because GEMBOS is arbitrary and has no meaning, unlike Defendant whose mark has a literal meaning.

17. Defendant's alleged ZAMBOS mark is inflammatory and derogatory and should never have been permitted to register on the USPTO.  In fact, a simple Google search, yields the following definition for Zambo, "racial terms used in the Spanish and Portuguese Empires and occasionally today to identify individuals in the Americas who are of mixed African and Amerindian ancestry (the analogous English term, considered a slur, is sambo)." *See* Exhibit "D."

18. Defendant's alleged trade dress is not distinctive now, and was not distinctive when Defendant filed its trademark applications.[1] *See* Exhibit "E."

19. Plaintiff denies all allegations of trademark infringement of Reg. No. 2,643,142 and trade dress infringement of any of Defendant's pending and registered trademarks.[2]

## COUNT 1

## DECLARATION THAT PLAINTIFF'S OWNERSHIP AND USE OF THE TRADEMARK GEMBOS DESIGN MARKS DOES NOT INFRINGE UPON DEFENDANT'S REGISTERED TRADEMARK ZAMBOS

---

[1] App. Nos. 86453618; 86453629; and 86453662.
[2] App. Nos. 86453700; 86453689; 86453674; 86453662; 86453629; and 86453618.

4

20. RNJ repeats and re-alleges each and every allegation contained in paragraphs 1 through 19 of this Complaint as though fully set forth herein.

21. By reason of the existence of an actual and justiciable controversy as discussed herein, RNJ is entitled to a declaratory judgment that its ownership of the Marks does not violate any trademark rights owned by Defendant.

22. RNJ is informed and believes, and thereon alleges, that its distribution and sale of plantain chips and snacks does not infringe any valid and enforceable trademark rights of the Defendant in the Defendant's marks.

23. RNJ is informed and believes, and thereon alleges, that there is no likelihood of confusion between Defendant's alleged trademark rights and RNJ's pending and registered trademark because the marks are distinguishable. Accordingly, Plaintiff RNJ seeks a declaration of the Court that its ownership of the registered and pending trademark applications does not violate any trademark rights owned by Defendant.

## COUNT II

### DECLARATION THAT PLAINTIFF'S OWNERSHIP AND USE OF THE TRADEMARK GEMBOS DESIGN MARKS AND PRODUCT PACKAGING DOES NOT INFRINGE UPON DEFENDANT'S TRADE DRESS

24. RNJ repeats and re-alleges each and every allegation contained in paragraphs 1 through 19 of this Complaint as though fully set forth herein.

25. RNJ's pending trademark applications which appear to protect trade dress were filed prior in time to Defendant's pending trademark applications.[3]

---

[3] RNJ's pending trademark applications were filed October 14, 2014 and November 3, 2014 while Defendant ATMS's pending trademark applications were filed November 13, 2014.

26. Upon information and belief, RNJ's product packaging and trade dress does not infringe upon any rights owned by Defendant because they are distinguishable. Accordingly, Plaintiff RNJ seeks a declaration of the Court that its product packaging does not violate any rights owned by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RNJ demands judgment against Defendant ATMS for:

A. A declaration that RNJ's use, advertisement, and sale of products under the trademark GEMBOS does not infringe upon any trademark rights held by Defendant;

B. A declaration that Plaintiff's ownership of the pending applications to protect the GEMBOS trade dress does not infringe upon Defendant's pending applications to protect the ZAMBOS trade dress;

C. an injunction prohibiting Defendant from alleging or threatening that Plaintiff's use of GEMBOS and its present product packaging does violate any federal, state, or common law trademark rights owned by Defendant;

D. an award of costs and reasonable attorneys' fees; and

E. such other and further relief as the Court may deem equitable and proper.

Dated:  March 23, 2015

Respectfully submitted,

**ALCOBA LAW GROUP, P.A.**
**/s/ Juliet Alcoba**
Juliet Alcoba, Esq.
Florida Bar No. 95502
/s/ Ruben Alcoba
Ruben Alcoba, Esq.
Florida Bar No. 169160
3399 NW 72 Avenue, Ste. 211
Miami, FL 33122
Telephone:  (305) 362-8118

E-mail: jalcoba@miamipatents.com
E-mail:  alcoba@miamipatents.com
*Attorneys for Plaintiff*
RNJ Holdings, Corp.

## JURY DEMAND

RNJ hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil

Procedure on the cause of action asserted in its Claim.

Dated:  March 23, 2015

**ALCOBA LAW GROUP, P.A.**
**/s/ Juliet Alcoba**
Juliet Alcoba, Esq.
Florida Bar No. 95502
Ruben Alcoba, Esq.
Florida Bar No. 169160
*Attorneys for Plaintiff RNJ Holdings, Corp.*

# EXHIBIT "A"

## Defendant's Demand Letter

# FERRAIUOLI LLC

March 16, 2015

**VIA ELECTRONIC AND CERTIFIED MAIL DELIVERY**

RNJ Holdings Corp.
3050 Nw 40th St.,
Miami FLORIDA 33142
pbarchilla@gmail.com

Re: *Infringement of the "Zambos" trademarks*

To whom it may concern:

*Ferraiuoli LLC* represents *Advanced Total Marketing Systems, Inc.* (hereinafter "ATMSI"), the owners of the "Zambos" trademarks and "Zambos" trade dress (hereinafter "*Zambos Marks*"). A depiction of the *Zambos Marks* follows below:




For the past 16 years, ATMSI has offered plantain chips and fried plantain products for sale in the United States using the *Zambos Marks*.

The *Zambos Mark* has been registered in the *United States Patent and Trademark Office* ("USPTO") by ATMSI since October 2002, Registration Number 2643142, under the international NICE classification #29, for plantain chips. (A copy of the registration has been enclosed herein for reference purposes). In addition, ATMSI has filed for registration of its *Zambos Marks* trade dress in the USPTO under the international NICE classification #29, claiming use in commerce since August 23, 2010. The Serial Numbers for the relevant

221 Ponce de León Avenue, 5th Floor   Hato Rey, Puerto Rico 00917     **T** 787.766.7000  **F** 787.766.7001  **W** www.ferraiuoli.com

9

applications in the USPTO are the following: 86453618, 86453629, 86453662, 86453674, and 86453689. (Copies of these applications have been enclosed herein for reference purposes). As the owner of all the intellectual property rights in and to the *Zambos Marks*, ATMSI takes very seriously the protection of its marks and is firmly committed to protecting it from any unauthorized use that may mislead and/or confuse the public.

The foregoing federal registration provides ATMSI with certain essential proprietary rights. These include the right to bar and restrict others from adopting or using the same trademark or a confusingly similar one. As such, it has come to our attention that you, RNJ Holdings Corp. ("RNJHC"), are attempting to use and register the name "Gembos" as a trademark, along with the following trade dress:

  

(hereinafter "Gembos") within the international NICE classification #29 for "Fried plantain; Fruit-based snack food."

Clearly, the name of Gembos and its designed trade dress are substantially and confusingly similar to that of the *Zambos Marks*. Moreover, the similarities are heightened when considered jointly with the similarity of the products rendered, namely, fried plantain products. Because the products offered are, in fact, almost identical, Gembos would be a direct competitor of the *ATMSI* products. Any reasonable and prudent consumer could be misled and confused into believing that the products between Gembos and ATMSI are related, creating a strong likelihood of confusion amongst the consuming public. The likelihood of confusion is the central issue in determining whether there is trademark infringement. International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 200 (1st Cir. 1996). Thus, your use of the Gembos name and trade dress is a clear violation of ATMSI' trademark rights and therefore, constitutes trademark infringement.

The Federal Trademark Act of 1946, also known as the Lanham Act, 15 U.S.C. §1051 *et seq.*, prohibits the unauthorized use of infringing trademarks "in connection with any goods ... or any **container for goods**, … **any word**, term, name, symbol, or device, or any combination thereof… which … is **likely to cause confusion**, or to cause mistake, or to deceive … as to the origin, sponsorship, or approval of his or her goods … by another person." 15 U.S.C. § 1125(a). (Emphasis added). That is, "[t]he purpose of trademark laws is to prevent the use of the same or similar marks in a way that confuses the public about the actual source of the goods or service." STAR Financial Services, Inc. v. AASTAR Mortgage Corp., 89 F.3d 5, 9 (1 Cir. 1996). As such, the Federal Lanham Act supports our position that identical and confusingly similar trademarks may cause confusion among consumers. As discussed, the use and adoption by you of the Gembos name and trade dress creates the impression in the consumers that your business,

2

products and services are associated, endorsed or sponsored by ATMSI' business, products and services, when in reality your business is in no way associated or sponsored by ATMSI. This confusion could lead to substantial damages to our client in terms of injury to its reputation, as it cannot control the quality of your products. Such a violation of ATMSI' trademark rights subjects RNJHC, Gembos and you personally, as its owners and/or operators, to monetary damages and a disgorgement of the Gembos profits earned from this infringement.

Accordingly, we hereby demand that you immediately cease and desist from continuing, in any fashion whatsoever, the illegal and unauthorized use of the Gembos name and trade dress, as well as any name and trade dress that bears a confusing resemblance to the same, including but not limited to, the selling of products bearing the Gembos name and trade dress, as well as, all corresponding digital, printed media and television advertising thereof. We further demand that you take immediate steps to delete the Gembos name and trade dress from all advertising and promotional materials, videos, billboards, stationery, business cards, and the like.

Please confirm in writing: (i) the steps that will be taken by you to comply with foregoing request; (ii) that you have discontinued any and all unauthorized and illegal use of the Gembos name and trade dress and will refrain from using it in the future; (iii) that you will not use in any fashion any material that infringes the intellectual property of ATMSI.

This letter is delivered without prejudice or waiver to any of ATMSI' right or remedies to claim damages for the unlawful and illegal conduct already incurred. ATMSI reserves all rights and remedies with respect to your unauthorized use of its intellectual property.

If we do not hear from you within **five (5) business days** of the mailing and delivery of this letter, ATMSI, may, without further notice, commence legal action against you requesting injunctive relief, statutory and/or actual damages to the maximum extent allowable by law in preventing and stopping the infringement of ATMSI' intellectual property rights in addition to the disgorgement of all profits attributable to the infringement.

Sincerely,

Maristella Collazo-Soto, Esq.

Cc: Eugenio Torres-Oyola, Esq.

C: Enclosures

3

# EXHIBIT "B"

# Division of Corporations Info

## FLORIDA DEPARTMENT OF STATE
## DIVISION OF CORPORATIONS

www.Sunbiz.org

## Detail by Entity Name

### Florida Profit Corporation

RNJ HOLDINGS, CORP.

### Filing Information

| | |
|---|---|
| **Document Number** | P14000050211 |
| **FEI/EIN Number** | NONE |
| **Date Filed** | 06/09/2014 |
| **Effective Date** | 06/07/2014 |
| **State** | FL |
| **Status** | ACTIVE |

### Principal Address

3050 NW 40TH ST
MIAMI, FL 33142

### Mailing Address

3050 NW 40TH ST
MIAMI, FL 33142

### Registered Agent Name & Address

VASQUEZ, REINA S
3050 NW 40TH ST
MIAMI, FL 33142

### Officer/Director Detail

### Name & Address

Title PD

VASQUEZ, REINA S
3050 NW 40TH ST
MIAMI, FL 33142

Title VPD

HOWARD, NOLVIA F
3050 NW 40TH ST
MIAMI, FL 33142

Title VPD

HAWIT, JESUS



# EXHIBIT "C"

# Defendant Trademark Assignment

## TRADEMARK ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
| --- | --- |
| NATURE OF CONVEYANCE: | ASSIGNS THE ENTIRE INTEREST AND THE GOODWILL |

CONVEYING PARTY DATA

| Name | Formerly | Execution Date | Entity Type |
| --- | --- | --- | --- |
| Corporacion Cressida S.A. de C.V. | | 10/28/2005 | CORPORATION: HONDURAS |

RECEIVING PARTY DATA

| | |
| --- | --- |
| Name: | Advanced Total Marketing Systems, Inc. |
| Street Address: | Samuel Lewis Avenue, P.O. Box 4881 |
| Internal Address: | Comosa Bank Building, First Floor |
| City: | Panama City 5 |
| State/Country: | PANAMA |
| Postal Code: | 0 |
| Entity Type: | CORPORATION: PANAMA |

PROPERTY NUMBERS  Total: 1

| Property Type | Number | Word Mark |
| --- | --- | --- |
| Registration Number: | 2643142 | ZAMBOS |

CORRESPONDENCE DATA

Fax Number:              (202)783-2331
*Correspondence will be sent via US Mail when the fax attempt is unsuccessful.*
Phone:                   202-626-6433
Email:                   barritt@fr.com
Correspondent Name:      Keith Barritt
Address Line 1:          1425 K Street, N.W., Suite 1100
Address Line 4:          Washington, DISTRICT OF COLUMBIA   20005

| ATTORNEY DOCKET NUMBER: | 12300-010002 |
| --- | --- |

DOMESTIC REPRESENTATIVE

Name:            Keith Barritt
Address Line 1:  1425 K Street, N.W., Suite 1100

**TRADEMARK**

| Address Line 4:   Washington, DISTRICT OF COLUMBIA   20005 | |
|---|---|
| NAME OF SUBMITTER: | Keith Barritt |
| Signature: | /Keith Barritt/ |
| Date: | 01/06/2006 |
| Total Attachments: 1<br>source=zambos#page1.tif | |

**TRADEMARK**
**REEL: 003222 FRAME: 0139**

## TRADEMARK ASSIGNMENT AGREEMENT

WHEREAS, Corporacion Cressida S.A. de C.V., a Honduran corporation having an address of APDO Postal 684, Tegucigalpa, Honduras ("Assignor"), has adopted and is the owner of the trademark ZAMBOS in the United States, including U.S. Registration No. 2,643,142 for ZAMBOS for "plantain chips" in Class 29.

WHEREAS, Advanced Total Marketing Systems, Inc., a Panamanian corporation having an address of Samuel Lewis Avenue, P.O. Box 4881, Comosa Bank Building, First Floor, Panama City 5, Panama ("Assignee") desires to acquire the ZAMBOS mark in the United States, including Registration No. 2,643,142 together with the goodwill of the business symbolized by the mark.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, effective as of the date of execution below Assignor does hereby sell, assign and transfer to Assignee, its successors and assigns all right, title and interest in and to the ZAMBOS mark together with the goodwill of the business symbolized by the mark.  Assignor further sells, assigns and transfers to Assignee its entire right, title and interest in and to any and all causes of action and rights of recovery for past infringement of the mark.

This assignment shall be binding upon the successors and assigns of Assignor and shall inure to the benefit of the successors and assigns of Assignee.

IN WITNESS WHEREOF, Assignor has executed this instrument as of the date indicated below.

Corporacion Cressida S.A. de C.V.

Signature

ING. MIGUEL MAURICIO FACUSSE SAENZ
Print name

LEGAL REPRESENTATIVE
Title

OCTOBER 28th, 2005
Date
40257739.doc

# EXHIBIT "D"

# Zambo Wikipedia

# Zambo

From Wikipedia, the free encyclopedia

**Zambo** (Spanish: [ˈθambo] or [ˈsambo]) or **cafuzo**
(Portuguese: [kɐˈfuzu]) are racial terms used in the Spanish
and Portuguese Empires and occasionally today to
identify individuals in the Americas who are of mixed
African and Amerindian ancestry (the analogous English
term, considered a slur, is *sambo*). Historically, the racial
cross between African slaves and Amerindians was
referred to as a "zambaggoa", then "zambo", then
"sambo". In the United States, the word "sambo" is
thought to refer to the racial cross between a black slave
and a white person.

The meaning of the term "sambo" however is contested
in North America, where other etymologies have been
proposed. The word most likely originated from one of
the Romance languages, or Latin and its direct
descendants. The feminine word is zamba (not to be
confused with the Argentine Zamba folk dance, although
there is some relationship in the concept).

| Zambo |
| --- |
| **Total population** |
| 801,000[1] |
| **Regions with significant populations** |
| Latin America, the Caribbean and Guyana |
| **Languages** |
| Spanish, Portuguese and English |
| **Religion** |
| Christianity (predominantly Roman Catholic, minority practices Protestantism), tribal religions |
| **Related ethnic groups** |
| Garifuna, Africans and Amerindians |

Under the casta system of Spanish colonial America, the term originally applied to the children of one
African and one Amerindian parent, or the children of two zambo parents. During this period, a myriad of
other terms denoted individuals of African/Amerindian ancestry in ratios smaller or greater than the 50:50
of zambos: *cambujo* (zambo/Amerindian mixture) for example. Today, zambo refers to all people with
significant amounts of both African and Amerindian ancestry, though it is frequently considered pejorative.

# Contents

- 1 History
- 2 Population today
- 3 Racism and discrimination
- 4 See also
- 5 References
- 6 External links

# History

The term zambo was not formally used in Spanish writing until the seventeenth century, and often competed with other terms, including *mulato*. African slaves began mixing with indigenous people from the beginning of their importation into Hispaniola in the early sixteenth century. Some of this mixture took place in the mines and plantations of Hispaniola, the other Spanish Caribbean islands following the introduction of sugar production in the 1520s, and also when Africans fled from these estates to unconquered indigenous regions.



A representation of an infant *zambo*, in an 18th-century "Pintura de Castas" from New Spain. The painting illustrates "from a Black and an Amerindian produces a *lobo*", here a synonym for *zambo*.

Unions described as producing zambos took place all throughout the Spanish colonial empire, following the pattern established in Hispaniola; and the group was generally classified among those people who were not of European ancestry. In the eighteenth century, the Spanish began producing systematic racial classifications, and zambo was defined in its final meaning.

Some famous zambo groups were created by runaway or rebel Africans who mixed with or took over indigenous communities. In the unconquered regions of Esmeraldes, in what would become Ecuador, for example, a small group of shipwrecked former slaves managed to win control of the indigenous communities, eventually representing them before Spanish authorities in the late sixteenth and early seventeenth centuries.

Another famous group of zambos were the Misquito Zambos, who originated around 1640 when a group of African slaves revolted on a slave ship, took it over and wrecked it at Cape Gracias a Dios on the border between Honduras and Nicaragua. They united with the indigenous Miskito people, and by the early eighteenth century came to dominate the kingdom, leading it on many extensive slave raids. Their alliance with and protection of English merchants and settlers in the area helped England found the colony of British Honduras (today's Belize).

# Population today

Officially, zambos represent small minorities in the northwestern South American countries Colombia, Venezuela, Guyana and Ecuador. A small but noticeable number of zambos resulting from recent unions of Amerindian women to Afro-Ecuadorian men are not uncommon in major coastal cities of Ecuador. Prior to the rural to urban migration, the Amerindian and Afro-Ecuadorian ethnicities were mostly constrained to the Andes region and province of Esmeraldas and the Chota Valley in the province of Imbabura respectively.

In Central America, there are two indigenous-African mixed groups, the Miskito and the garifunas. The Garifuna originated from the combination of Africans who were either shipwrecked or fled from neighboring islands to St. Vincent, in the course of the seventeenth and eighteenth centuries. In 1797 they were deported by the English for their role in supporting France during the French Revolutionary Wars to the island of Roatan off the coast of Honduras. From there they spread up and down the coast of Central America, communities being found from Nicaragua to Belize.

In Mexico, where zambos are known as *lobos* (literally meaning wolves), they formed a sizeable minority in the past. The great majority of lobos have now been absorbed into the much larger Mexican mestizo population. Greater concentrations can only be found in tiny communities scattered around the southern coastal states, including Michoacán, Guerrero, Oaxaca, Campeche, Quintana Roo, Yucatán, and Veracruz, where the country's Afro-Mexicans reside.

Culturally, Mexican *lobos* followed more Amerindian traditions rather than African influences. This acculturation also took place in Bolivia, where the Afro-Bolivian community absorbed and retained many aspects of Amerindian cultural influences, such as dress and use of the Aymara language. These communities of Afro-Bolivians reside in the *yungas* of the Bolivian capital La Paz.



"From a black man with a *mulata* produces a Sambo", Indian school, 1770.

## Racism and discrimination

These populations of mixed Amerindian and African ancestry are generally marginalized and discriminated against, with color bias being pervasive throughout much of Latin America. Beyond the pockets of these specifically identified ethnic communities, in Latin American nations with large populations of people of African descent, the percentage of those with Hispanic ancestry is relatively high (though not as a ratio of the make up of the individuals). Such is the case in nations such as Nicaragua, and Panama, or in the case of Brazil, persons of primarily African descent who also have Portuguese ancestors.



"Zamba of Mesquititlan", circa 1908

Long-standing problems of race and class discrimination in Latin America confront Latin Americans of African and Amerindian ancestry to varying degrees, depending on their membership in or identification with a specific Afro-Amerindian ethnic group such as those mentioned above, or the degree to which their ancestry is expressed in their physical characteristics. Those with dark skin and curly hair tend to be among the region's poorest and most disenfranchised. For instance, in 1998, when Hurricane Mitch battered the northeast coast of Honduras, the Garifuna communities were among the hardest hit, yet because of a history of corruption and government irresponsibility in Honduras, these communities were ignored.

## See also

- Afro-Latin American
- Black Indians
- Black Seminoles
- Casta
- Cholo
- Garifuna people

- Marabou
- Melungeon
- Mestee
- Mestizo
- Miskito
- Miscegenation
- Mulatto
- List of topics related to the African diaspora

## References

1. "Peoples Listing: Zambo" (http://www.joshuaproject.net/peoples.php?rop3=111140). *Joshua Project*. U.S. Center for World Mission. Retrieved 2008-08-27.

## External links

- Stranded in Paradise: Shipwrecked Hundreds of Years Ago, the Garifuna Are Still Trying to Find Their Way (http://www.washingtonpost.com/ac2/wp-dyn?pagename=article&node=&contentId=A61891-2002Dec1&notFound=true) by Teresa Wiltz, The Washington Post.

Retrieved from "http://en.wikipedia.org/w/index.php?title=Zambo&oldid=627748971"

Categories: African–Native American relations | Multiracial affairs in the Americas | Ethnic groups in the Americas | Latin American caste system | Ethnic groups in Latin America

- This page was last modified on 1 October 2014, at 00:09.
- Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. By using this site, you agree to the Terms of Use and Privacy Policy. Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a non-profit organization.

# EXHIBIT "E"

## Google Images





3/22/2015                                                          shop plantain chips - Google Search





